John Hendrickson<br>
vs. } W. C. A. No. 1291.<br>
Universal Winding Co.

### DECISION.

February 4, 1932.

WALSH, J. This is a petition for relief under the provisions of the Workmen's Compensation Act.

Petitioner was a molder employed in defendant's foundry. While he was in the course of his employment, a fellow employee threw some water upon him. Petitioner grabbed his fellow employee by the arm and remonstrated with him for fooling. The fellow employee struck petitioner in the face and broke petitioner's jaw. It is for the broken jaw and the injury resulting therefrom that the petitioner seeks relief from the employer.

It appeared in evidence that the employer had expressly forbidden fighting or horse-play among employees prior to above occurrence.

An injury by a fellow servant, unless it arises out of and in the course of employment of the petitioner, is not in our opinion a risk that the employer assumes. In this case, an independent quarrel between two employees, in no way related to or connected with the employer's business, was the cause of the injury to petitioner and we feel that the employer cannot be held responsible for the consequences of such a quarrel.

Petition for relief denied and dismissed.

For petitioner: H. A. T. P. & Wheeler.

For respondent: James I. Shepard.

Weston A. Gifford<br>
vs. } W. C. A. No. 1249.<br>
Fox Point Warehouses, Inc.

### DECISION.

February 4, 1932.

WALSH, J. This is a most distressing case, a case that appeals to all our human sympathies. A working man, apparently an honest, good, hard-working citizen, has suffered the loss of his leg. Our sympathies go out to him because we ought to sympathize with an honest citizen who suffers a disability while trying to earn a living for himself and his family.

The evidence in this case goes to show that sometime in May, 1930, while this man was employed as a laborer by the respondents, to truck cotton from the scales to the warehouse and from the warehouse out to the loading platform and so forth, he went into this No. 5 warehouse alone with a large bale of cotton, weighing five hundred pounds or better, on a

truck; and I think we can take judicial notice of the fact that bales of cotton ordinarily weigh in excess of five hundred pounds. While he was in there alone, the bale shifted on his truck. In attempting to get it into a position where he could handle it, he placed one of the handles of the truck between his legs and the bale got away from him. It slipped, hit the lip of the truck, causing the weight of the bale to be applied as a lever on the end of that lip and that caused the handle to come up and strike him between his legs. The petitioner says that happened and he is corroborated by his fellow workman Warrener, who was out at the scales at the time and who remembers that, after being in warehouse No. 5 longer than was necessary to take care of this one bale of cotton, the petitioner came to him and told him what had occurred.

There is no question that the handle of that truck hit this man in the perineum, but the petitioner kept on working from the 23rd of May, 1930, up to the 3rd day of July. To be sure, he told Warrener that he had pain in his leg and he told Gonsalves he had pain in his back, but he kept working until the 3rd of July, when this perineum was in bad condition. The next morning he asked his wife to telephone for Dr. Lafleur.

Dr. Lafleur tells us that he found an inflamed area around the perineum which was swollen and inflamed; that the swelling was quite large and hard; that he applied local anodynes and ointments and poultices; that the petitioner told him at that time that he hurt himself while handling this truck; that when he saw petitioner on the morning of July 4th, there was an abscess developing. He goes further and says that this abscess could have been caused by this injury. He says that from July 4th to the 9th this abscess was developing very rapidly and the patient was becoming worse. The doctor further testifies that gangrene,

which caused ultimately the loss of the foot, could have been caused by this blow. In cross-examination, we find that Dr. Lafleur told something different before the Commissioner. He told before the Commissioner that this blow could not have caused this trouble. It is there in the record and the doctor does not deny it. On two minor points in his cross-examination, the doctor testified before us differently than he testified before the Commissioner.

Now, the respondent says, in substance, "This man may have been hurt as he says but we don't know anything about it. The Workmen's Compensation Act prescribes a certain time to give notice to us. The purpose of that notice is to give us an opportunity to take care of our employees, medically and surgically, and to reduce our expense that we are obliged to undergo by reason of the terms of the Workmen's Compensation Act. We had no notice of this at all. The man kept right on working after this alleged accident; he kept right on working six or seven weeks and then he got sick and our manager, Mr. Johnson, because he liked the man and out of personal friendship apparently, went down to see him and found that this petitioner was facing the loss of his foot by amputation."

The Court is not going to pay much attention to lack of notice. The big problem in this case is, Has the petitioner proved that his injury, if he got one by this blow, was the cause of his present condition? I don't think he has.

We have the testimony of Dr. Lafleur which I must discount in view of the contradictions that I have previously mentioned. We have the testimony of Dr. Kershaw, who struck me as being absolutely fair and who examined Gifford on March 25th, 1931. His opinion, in substance, is, that this abscess of the perineum was caused by an infection; that the infection

came from the anus; that there was no history of tuberculosis or syphilis in the case; that such an abscess is a very common condition due to the multitude of germs that are prone to collect in that portion of the human body, if care is not taken; that trauma would not produce this abscess unless the injury was a crushing injury sufficient in force to cause a cellular destruction, and if that happened the man would be immediately incapacitated and would not be able to do any work thereafter; that there was no relation between the condition of the perineum and the abscess or the final amputation; that it was perineal entirely; that he was unable to connect this injury in any way, shape or fashion with trauma. He is corroborated by Dr. Palmer who, while he does not go to the extent of Dr. Kershaw in stating that the abscess might have been caused by trauma provided the injury was a crushing injury and caused a cellular destruction, does state that an abscess is caused by some germ from the outside getting into the body; that if this blow had lacerated the skin and a germ could have gotten in, it might account for this abscess; that in these cases of gangrene caused by a thrombus, known as a thrombosis, the doctors themselves cannot explain the cause of more than 75% of the cases; that in this particular case the blow could not have caused the abscess; that the blow could not have caused the gangrene and the loss of his foot.

On that most important part of the petitioner's case, I think that the great preponderance of the testimony is against the petitioner and, much as I sympathize with this poor man in his present condition, I am obliged under the law to deny and dismiss his petition.

For petitioner: Michael Pedro.

For respondent: Gardner, Moss & Haslam.